Hearing Date: 10/10/2024 9:45 AM
Location: Court Room 2405
Judge: Reilly, Eve M

FILED DATE: 6/18/2024 11:32 AM   2024CH05690

FILED
6/18/2024 11:32 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024CH05690
Calendar, 7
28159888

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT-CHANCERY DIVISION**

| | | |
|---|---|---|
| THE FORDHAM CONDOMINIUM ASSOCIATION, an Illinois Not-For-Profit Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case Number  2024CH05690 |
| CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; LISA CHANG VITALE; and BRIAN SEXTON. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

NOW COMES Plaintiff, THE FORDHAM CONDOMINIUM ASSOCIATION (hereinafter "the Association"), by and through its attorneys KEOUGH & MOODY, P.C., who states the following in support of its Complaint for Injunctive and Other Equitable Relief against CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; LISA CHANG VITALE; and BRIAN SEXTON:

## GENERAL ALLEGATIONS

1.     The Association is duly organized as an Illinois Not-for-Profit Corporation in good standing and is a condominium association established pursuant to the Illinois Condominium Property Act 765 ILCS 605/1, *et seq.* ("Act") and the *Declaration of Condominium Pursuant to the Condominium Property Act The Fordham Condominium*, recorded with the Cook County Recorder of Deeds as Document Number 0021328830 ("Declaration"). Attached hereto as **Exhibit A** is a true and accurate copy of the Declaration.

FILED DATE: 6/18/2024 11:32 AM   2024CH05690

2.      The Association is located in the City of Chicago, Cook County, Illinois, and consists of 229 condominium units.

3.      Defendant Chicago Title Land Trust Company, as the successor trustee of Trust Number 5218 ("Owner"), is the record owner of the condominium unit commonly known as 25 E. Superior Street, Unit 404, Chicago, Illinois ("Unit 404"). Attached hereto as **Exhibit B** is a true and accurate copy of the Deed.

4.      Unit 404 is located within the Association.

5.      Ronen Glimer ("Glimer") is the party who holds the power of direction for Trust Number 5218.

6.      Defendant LISA CHANG VITALE ("Vitale") is a resident of Cook County, as she is the tenant of Unit 404, pursuant to the terms of a lease that remains in effect until March 1, 2025. Attached hereto as **Exhibit C** is a true and accurate copy of the Lease and Extension of Lease Agreement.

7.      According to the lease for Unit 404, the tenants are Lisa and Arabella Vitale. *See* Exhibit C.

8.      Paragraph 9 of the lease for Unit 404 states that the only persons authorized to occupy Unit 404 are Lisa and Arabella Vitale. *See* Exhibit C.

9.      Paragraph 9 further provides that Unit 404 is to be occupied exclusively by the identified tenant and the other persons specifically listed. *See* Exhibit C.

10.     Paragraph 9 also provides that neither the tenant nor any person in legal occupancy of the premises shall perform or permit any practice which could cause damage to the reputation of the building or the landlord or which may be injurious thereto, illegal, immoral or increase the rate of insurance. *See* Exhibit C.

11.     Paragraph 9 also states no person may occupy the premises for more than a single two (2) week period during a single year of the lease. *See* Exhibit C.

12.     Paragraph 40 of the lease for Unit 404 is entitled "Rules and Regulations of Condominium/Homeowners Association" and it states that if the premises is located within a condominium, the tenant or the guest of the tenant shall comply at all times with the rules and regulations, declarations, covenants and restrictions of the condominium association. *See* Exhibit C.

13.     BRIAN SEXTON ("Sexton") previously occupied the property commonly known as 25 East Superior Street, Unit 4201, Chicago, Cook County, Illinois ("Unit 4201"), located within the Association.

14.     Chicago Title Land Trust Company, not personally but solely as Trustee under Trust Agreement dated November 8, 2012, and known as Trust No. 8002360627, is the owner of Unit 4201. Attached hereto as **Exhibit D** is a true and accurate copy of the deed.

15.     The power of direction for Trust No. 8002360627 vests in The Neilsen Property Group, LLC, by Sexton and Jamila Aldasheva. Attached hereto as **Exhibit E** is a true and accurate copy of the Land Trust Agreement.

16.     On February 21, 2023, a court order was entered by the Honorable Judge Naomi Schuster in the case known as *In Re the Marriage of Jamila Aldasheva and Brian Sexton* and assigned case number 2019 D 002943, related to Unit 4201, which provided that Sexton is:

> . . . **prohibited *instanter* from entering, remaining or otherwise being present in or around the Marital Residence located at 25 East Superior Street, Unit 4201, Chicago, Illinois 60611** and any other location associated with the ownership of the Marital Residence including but not limited to the garage spaces, the storage unit, and the humidor located in 25 East Superior, Chicago, Illinois.

Attached hereto as **Exhibit F** is a true and accurate copy of the February 21, 2023, court order.

3

(emphasis added).

17.     The court order also states that Jamila is granted " . . . sole and exclusive possession . . . ." of Unit 4201 and all locations associated with the ownership of the Unit. *See* Exhibit F.

18.     On March 26, 2024, Sexton filed paperwork with the Circuit Court of Cook County and indicated that his address was "25 East Superior Street Unit 404, Chicago, Illinois". Attached hereto as **Exhibit G** is a true and accurate copy of the March 26, 2024, filing by Sexton.

19.     Pursuant to the Recitals of the Declaration, the Developer desired and intended that all persons or entities having an interest in the Association's Property hold their interest subject to the rights, easements, privileges, and restrictions within the Declaration, in an effort to further a plan to promote and protect the cooperative aspect of the Property and to enhance and perfect the value, desirability and attractiveness of the Association's Property. *See* Exhibit A.

20.     Section 1 of the Declaration provides that a Unit Owner owns a condominium unit and has a percentage of ownership interest in the Common Elements. *See* Exhibit A, Sections 1(z) and (rr).

21.     Section 2 of the Declaration provides that the Property within the Association is submitted to the provisions of the Declaration and the Act. *See* Exhibit A.

22.     Section 4 of the Declaration provides that the right to use the Common Elements and to use and occupy a unit is subject to the terms of the Act, the Association's condominium instruments and its rules and regulations. *See* Exhibit A.

23.     Section 4(b) of the Declaration provides that Unit Owners and their permitted occupants and invitees have the right to use the Common Elements for all purposes incident to the use and occupancy of a unit, which is to be a place of residence and that such rights are appurtenant to and run with the unit. *See* Exhibit A.

4

24.     Section 4(e) of the Declaration provides that use and possession of a Parking Space Limited Common Element is appurtenant to the Unit it is assigned to and can only be transferred independent of the unit for which it is appurtenant, if to a unit owner. *See* Exhibit A.

25.     Section 7 of the Declaration also states that any such lease shall be subject to the terms of the Declaration and any failure of the lessee to comply with the terms of the Declaration shall be in default under the terms of the lease. *See* Exhibit A.

26.     Section 7 of the Declaration further provides that no unit owner who leases his unit is relieved of his obligations under the Declaration. *See* Exhibit A.

27.     Section 8(a) of the Declaration provides that the Association is an Illinois not-for-profit corporation, which shall be the governing body for all Unit Owners and for the administration and operation of the condominium Building. *See* Exhibit A.

28.     Section 8(b) of the Declaration provides that unit owners are members of the Association. *See* Exhibit A.

29.     Section 11(d) of the Declaration provides that nothing shall be done or kept in any Unit or in the Common Elements that will increase the rate of insurance on the Property. *See* Exhibit A.

30.     Section 11(g) of the Declaration provides that no noxious or offensive activity shall be carried on in any Unit or in the Common Elements, nor shall anything be done either willfully or negligently, which may become an annoyance or nuisance to the other Unit Owners or occupants. *See* Exhibit A.

31.     Section 12 of the Declaration provides that any violation of any rule or breach of covenant or provision provided in the By-Laws or the Declaration shall give the Association the right to enjoin, abate, or remedy, by appropriate legal proceedings either at law or in equity, the

5

continuance of any breach. *See* Exhibit A.

32.  Section 12 of the Declaration allows the Association to recover any and all costs and expenses incurred by the Association in the exercise of its authority, including court costs and attorneys' fees. *See* Exhibit A.

33.  Article XV, Section 15.01 of the Association's Declaration permits the Association to take that action which is necessary to correct a violation or breach and to recover the attorneys' fees and costs incurred against the violating Owner. *See* Exhibit A.

34.  Further, Section 9.2 of the Act states as follows:

> Any attorneys' fees incurred by the Association arising out of a default by any unit owner, his tenant, invitee or guest in the performance of any of the provisions of the condominium instruments, rules and regulations or any applicable statute or ordinance shall be added to, and deemed a part of, his respective share of the common expense.

765 ILCS 605/9.2(b).

35.  Article IV, Section 1 of the By-Laws provides that the affairs of the Association shall be managed by its board of directors. *See* Exhibit A.

36.  Article IV, Section 11 and Article VI, Section 1(h) of the By-Laws provide that the board of directors has the authority to adopt rules and regulations. *See* Exhibit A.

37.  Article IV, Section 15 of the By-Laws provides that the determination by the board of any question of interpretation or application of the provisions of the Declaration, the rules and regulations or By-Laws, is final and binding on each and all Unit Owners. *See* Exhibit A.

38.  Article VI, Section 2(a) of the By-Laws states that the Association has the authority to engage the services of a manager or managing agent. *See* Exhibit A.

39.  Section 18.3 of the Act provides that each Unit Owner is a member of the Association. 765 ILCS 605/18.3.

6

40.    Section 18.3 of the Act further provides that the overall administration of the Property within the Association shall be performed through its board of directors. 765 ILCS 605/18.3.

41.    Section 18.4(h) of the Act gives the board of directors the power and right to adopt reasonable rules and regulations. 765 ILCS 605/18.4(h).

42.    On October 28, 2004, the Association's Board of Directors adopted rules and regulations. Attached hereto as **Exhibit H** is a true and accurate copy of the Association's rules and regulations.

43.    The Introduction to the rules and regulations states that the rules are intended to provide a practical framework to ensure mutually comfortable surroundings and security. *See* Exhibit H.

44.    Paragraph 1 of the "General Rules" states that no resident shall permit any act which unreasonably interferes with the quiet use and enjoyment of another resident or the value of another resident's property. *See* Exhibit H.

45.    The rules and regulations provide under the "Anti-Harassment Policy" that no owner, resident, or guest may harass, discriminate, or retaliate against any employee, independent contractor, or the managing agent of the Association. *See* Exhibit H

46.    This Section of the rules also states that each unit owner is responsible for the actions of his residents and the guests and visitors to his unit. *See* Exhibit H.

47.    The rules and regulations provide under "Common Elements" that loitering in the common elements is prohibited. *See* Exhibit H.

48.    It also states that smoking is prohibited in all indoor common elements of the Property, including but not limited to the Hospitality Room. *See* Exhibit H.

7

49. The rules and regulations also provide under "Common Elements" that doors must not be propped open, or the locking mechanism tampered with in any way. *See* Exhibit H.

50. The rules and regulations provide under "Door staff" that the door staff will provide access only to residents and guests whose admittance has been authorized by a resident by using a Permission to Enter form, memo, fax, or inclusion of their name with the Management Office admittance list. *See* Exhibit H.

51. A resident or guest may not ask the door staff to allow a guest entry, without obtaining permission by telephone of the resident. *See* Exhibit H.

52. The rules and regulations provide under "Hospitality Room" that the Hospitality Room is available for use by owners and residents and for entertaining family and friends. *See* Exhibit H.

53. It states that Owners/Residents can use their fobs to access the Hospitality Room. *See* Exhibit H.

54. The rules and regulations provide under "Use and Occupancy" that all persons visiting a Unit for personal business purposes shall be required to sign in and out at the front desk of the Building. *See* Exhibit H.

55. The Association entered into a management agreement with Lieberman Management Services, Inc. a FirstService Residential company ("FSR") whereby FSR agreed to assist with managing the day-to-day operations of the Association and to assign an on-site community association manager. Attached hereto as **Exhibit I** is a true and accurate copy of the management agreement.

56. The management agreement provides in Section 15 that the work environment for the on-site community association manager and any employee shall be free of harassment and

8

discrimination. *See* Exhibit I.

57.    The Association utilizes a key fob system to access certain areas of the Building, including but not limited to: parking garage to the residential portion of the building; sidewalk entrances off of Wabash Avenue and Huron Street; public portion of the parking garage to the private portion of the parking garage; to activate the passenger, freight, and parking elevator when accessing most floors; entry to the Fitness Center, pool, Hospitality Room; to access the wine cellar, humidors and library in the basement; Penthouse lobby; laundry room; bicycle room; spa and theater on the 7th floor; alley entrance located next to the south loading dock; entry to the passenger elevator from inside the lobby; and the non-revolving door at the front entry.

58.    Unit Owners and their authorized residents or occupants are provided with a fob.

59.    Each unit has a separate fob for entry and use of the Association's fobs is separate and distinct from locks for individual units.

60.    The Association has door staff at the main entrance of the Building to allow entry, during most hours of the day.

61.    Vitale is a real estate agent in Chicago.

62.    The Association allows a unit owner who has listed his property for sale to provide the listing agent with a fob assigned to the unit, so as to ensure access to the unit when needed for a showing.

63.    Unit 4902 was sold in July 2023, and the listing agent for the sale was Vitale.

64.    On or about March 25, 2024, as supported by the fob usage report, Sexton, at approximately 5:48 p.m., Sexton while alone attempted to use the fob assigned to Unit 4902 so as to gain access through the garage gate and private area of the garage, but was denied access.

65.    On or about March 25, 2024, as supported by the fob usage report Sexton, while

alone attempted to use the fob assigned to Unit 4902 to gain access to the Fitness Center, but was denied access.

66.     This access by Sexton on March 25, 2024, led to the fob assigned to Unit 404 to being deactivated by the Association's managing agent.

67.     Despite the terms of the February 21, 2023, order, on March 26, 2024, Sexton went to the Association's on-site management office requesting that he be provided with keys for Unit 4201 and a fob associated with Unit 4201. Attached hereto as **Exhibit J** is a true and accurate copy of the March 26, 2024, email from Brian Sexton.

68.     Sexton also demanded that a work order be processed to change the locks for Unit 4201. *See* Exhibit J.

69.     After Sexton's visit to the on-site management office, management advised Vitale in writing that her fob was deactivated as an unauthorized person used her fob. Vitale was also reminded of the rules. Attached hereto as **Exhibit K** is a true and accurate copy of the March 26, 2024, email to Lisa Vitale.

70.     Thereafter, Sexton returned to the on-site management office demanding again that he be identified within the Association's books and records as the owner of unit 4201 and that he wanted access to Unit 4201's online account with the Association.

71.     On March 27, 2024, through its legal counsel, the Association sent a cease-and-desist letter to Sexton demanding that he cease and desist from engaging in disruptive or harassing conduct, from having direct communication with the Association's managing agent or staff, and from visiting the on-site management office. Attached hereto as **Exhibit L** is a true and accurate copy of the March 27, 2024, letter to Brian Sexton.

72.     The letter of March 27, 2024, also explained why the locks to Unit 4201 would not

10

be changed; why he would not be provided with a fob associated with Unit 4201; and why he will not be recognized as the Owner of Unit 4201. *See* Exhibit L.

73. On March 27, 2024, through its legal counsel, the Association sent a warning letter to the co-executors of the estate of Josef Glimer as Josef Glimer was the designated member of the Association for Unit 404. Attached hereto as **Exhibit M** is a true and accurate copy of the March 27, 2024, letter without enclosures.

74. The letter to Glimer stated that the Association had reason to believe that Vitale was providing Sexton with a fob that allowed Sexton to have access throughout the Condominium Property and that providing a fob to a non-resident is a violation of the condominium instruments. *See* Exhibit M.

75. The letter to the Glimer also stated that if it disputed that a violation of the Association's documents occurred, a hearing with the board of directors could be requested. *See* Exhibit M.

76. Between March 27, 2024, and through April 2, 2024, Vitale was told by the Association's on-site management office to contact her landlord to discuss her request for a fob to be reactivated.

77. On April 22, 2024, as supported by the fob usage report, at approximately 2:12 p.m., Sexton, while alone, gained access to the Fitness Center by using a fob assigned to Unit 404, and he remained in the Fitness Center to complete a workout.

78. Also on April 22, 2024, as supported by video footage and the fob usage report, at approximately 8:59 p.m., Sexton, while alone, gained access to the Hospitality Room by using a fob assigned to Unit 404, and loitered in the Hospitality Room from 9:00 p.m. until 2:42 a.m.

79. Except between 12:12 a.m. until 12:35 a.m., when Vitale was also present, Sexton

11

remained alone in the Hospitality Room.

80.     Sexton was in the Hospitality Room beyond its designated operating hours, and as supported by video footage, he was vaping in the room, lying around on the couch without the owner and resident, and he propped the door open.

81.     On or about April 26, 2024, the fob assigned to Unit 404 was deactivated due to Sexton's actions on April 22, 2024, and Glimer was notified of this on April 29, 2024.

82.     The Association, through its legal counsel, on April 30, 2024, notified the Owner through its attorney, of Sexton's actions on April 22, 2024. Attached hereto as **Exhibit N** is a true and accurate copy of the April 30, 2024, letter.

83.     The April 30th letter advised the Owner of what occurred and that each time its tenant allows a non-resident to have unfettered access of the common elements, the fob will be deactivated. The letter also stated that violations of the condominium instruments will only be addressed with the unit owner. *See* Exhibit N.

84.     On April 30, 2024, the Association demanded that the Owner take the necessary action to have its tenant and her guest comply with the Association's condominium instruments and to stop making demands of management. *See* Exhibit N.

85.     Once again, the Owner was given the opportunity to request a hearing with the board of directors. *See* Exhibit N.

86.     On April 30, 2024, members of the Association's staff advised the on-site community association manager that the fire exit stairwell door from the fourth-floor residential hallway and the sixth-floor hallway door were propped open and with tape on the door latch.

87.     On May 1, 2024, the Owner was again reminded that the fob would be deactivated each time the tenant transferred the fob to a non-resident.

12

88.     On May 2, 2024, Glimer confirmed that the only authorized occupants for Unit 404 are Lisa and Arabella Vitale.

89.     On May 2, 2024, at approximately 9:00 a.m., supported by video footage and the fob usage report, Sexton, alone and with no shoes, used a fob assigned to Unit 404 to gain access to the elevator cab within the lobby.

90.     On May 6, 2024, members of the Association's staff reported to the on-site community association manager that the latches on the doors to the stairwells on the 4th, 6th and 11th floors were again taped so as to allow free access between these floors.

91.     Unit 404 is located on the 4th floor of the Building.

92.     The parking assigned to Unit 404 is located on the 6th floor of the Building.

93.     The Fitness Center, Hospitality Room and the Sundeck are located on the 11th floor of the Building.

94.     On May 6, 2024, Vitale sent an email to the supervisors of the Association's community association manager alleging that the manager was acting illegally because Vitale was being locked out without notice or reason. Attached hereto as **Exhibit O** is a true and accurate copy of the May 6, 2024 email from Lisa Vitale.

95.     On May 7, 2024, through the Association's legal counsel, a cease-and-desist letter was sent to Vitale, in care of her attorney, stating that the fobs assigned to Unit 404 were deactivated since Vitale continues to provide the fobs to a non-resident. Attached hereto as **Exhibit P** is a true and accurate copy of the May 7, 2024 letter.

96.     The letter also stated that Vitale was told to discuss the deactivation with her landlord; yet she continued to contact the managing agent and to disrupt the staff within the management office. Vitale was demanded to immediately cease and desist from visiting the on-

13

site management office and from communicating with the managing agent or any member of the Association's staff about her fob. *See* Exhibit P.

97.     On or about May 7, 2024, fobs assigned to Unit 404 were deactivated, and Vitale, through her attorney, was advised that so long as her landlord did not object, two new fobs would be available for pick up on May 8, 2024, by Vitale. Attached hereto as **Exhibit Q** is a true and accurate copy of the May 7, 2024, email from the Association's legal counsel.

98.     Vitale was also told on May 7, 2024, that if she continued to violate the restrictions and share the fob with a non-resident, the fob would be deactivated for a period of time. *See* Exhibit Q.

99.     On May 13, 2024, the Association staff reported to the community association manager that stairwell doors on the 4th, 6th and 11th floors were discovered to have tape on them so that they would not close properly.

100.    On May 14, 2024, at approximately 4:00 p.m., the stairwell door latches on the 11th floor were propped and Sexton was found sitting alone in the sundeck.

101.    The police were called since Sexton was trespassing on the common elements.

102.    At that time, Sexton stated he was a resident and that he had paperwork within Unit 404, that supported the same.

103.    After going to Unit 404 with the police and Association staff, Sexton provided the police with the paperwork related to Unit 4201 to prove he was a resident within the Association.

104.    Thereafter, Vitale told the police Sexton was her guest at which time all present went to the front desk to allow Sexton to sign in, since he did not do that earlier.

105.    When Sexton signed in, he wrote: "5/14-5/30" for the date; "Neilsen Property" as the company; and that he was going to see himself in Unit 404. Attached hereto as **Exhibit R** is a

14

true and accurate copy of the Visitors Register for the month of May.

106. On May 15, 2024, supported by video footage and the fob usage report, while alone, Sexton used the fob assigned to Unit 404 to gain access to the Building, which resulted in the fob being deactivated for one week.

107. The Owner was advised that its tenant violated the Association's condominium instruments again on May 15th.

108. On May 17, 2024, supported by video footage and the fob usage report, while alone, at approximately 7:10 p.m., Sexton used the fob assigned to Unit 404 and entered the Building through the Wabash Avenue entrance.

109. On May 17, 2024, supported by video footage and the fob usage report, while alone, at approximately 7:10 p.m., Sexton used the fob assigned to Unit 404 to use the freight elevator.

110. On May 20, 2024, Vitale sent another email to the Association's on-site community association manager's supervisors, again alleging that the manager was engaged in illegal management practices. Attached hereto as **Exhibit S** is a true and accurate copy of the May 20, 2024, email.

111. In her email, Vitale inaccurately stated that only her guests are required to sign in, and she alleged that she is the subject of illegal lock outs, for which no notice or due process was provided. *See* Exhibit S.

112. On May 22, 2024, supported by video footage and the fob usage report, at approximately 5:24 p.m., Sexton, alone, entered the Building through the sidewalk entrance off of the Wabash Avenue entrance, by using the fob assigned to Unit 404.

113. On May 23, 2024, supported by video footage and the fob usage report, at approximately 7:34 p.m., Brian Sexton, alone, entered the Building through the sidewalk entrance

15

off of the Wabash Avenue entrance, by using the fob assigned to Unit 404.

114. On May 24, 2024, supported by video footage and the fob usage report at approximately 10:25 a.m. and 5:20 p.m., Brian Sexton, alone, entered the Building through the sidewalk entrance off of the Wabash Avenue entrance, by using the fob assigned to Unit 404.

115. On June 3, 2024, supported by video footage and the fob usage report at approximately 5:44 p.m., Brian Sexton, alone, entered the Building through the Wabash Avenue entrance, by using the fob assigned to Unit 404.

116. On June 5, 2024, supported by video footage and the fob usage report at approximately 6:27 a.m., Brian Sexton, alone, entered the pool area on the 11th floor, by using the fob assigned to Unit 404.

117. On June 5, 2024, supported by video footage and the fob usage report at approximately 11:26 a.m., Brian Sexton, alone, entered the Building through the Wabash Avenue entrance, by using the fob assigned to Unit 404.

118. On June 5, 2024, supported by video footage and the fob usage report at approximately 4:54 p.m. and 6:54 p.m., Brian Sexton, alone, accessed the private garage gate and entered the Building through the private garage area, by using the fob assigned to Unit 404.

**COUNT I**
**DECLARATORY RELIEF**
**(Against all Defendants-If Sexton is A Guest)**

119. The Association restates and realleges Paragraphs 1 through 118 of the General Allegations as paragraph 119 of Count I as though they are fully restated herein.

120. This Count is brought pursuant to 735 ILCS 5/2-701.

121. Vitale is not a member of the Association but acts as if she is and expects to be treated as one by the Association.

122. Sexton is not a tenant or Owner of Unit 404.

123. Sexton is the guest of Vitale.

124. The Association has demanded that the Owner and Vitale, who is not a unit owner and is not a member of the Association, not allow a non-resident to use a fob assigned to Unit 404.

125. The Association has demanded that the Estate and Vitale no longer allow a non-resident to have unfettered access and enjoyment of the common elements, when not with an owner or authorized resident, as such access and enjoyment is reserved for owners, residents and authorized occupants.

126. The Association has demanded that Vitale, who is not a unit owner and is not a member of the Association, not have contact with Association's managing agent.

127. The Association has demanded that Vitale, a person who is not a unit owner and is not a member of the Association, direct her questions, concerns, and issues related to her use and enjoyment of Unit 404 to her landlord, the owner of Unit 404 and the Association's member.

128. The Association has demanded that Vitale, a person who is not a unit owner and is not a member of the Association, not violate the Association's condominium instruments.

129. Vitale has refused to comply with the Association's condominium instruments.

130. Sexton continues to act in a manner that violates the Association's condominium instruments.

131. Sexton's and Vitale's actions, that violate the Association's condominium instruments, are a breach under the lease between Vitale and the Owner.

132. Therefore, Vitale does not have the right to remain in possession of Unit 404, under the terms of the lease.

133. A unit owner is responsible for the actions of its tenants, residents, and the guests

17

of its tenants.

134. Section 12 of the Association's Declaration provides that any Unit Owner whose lessee or occupant is in default under the provisions of the By-Laws or the rules and regulations of the Association, shall pay the Association an agreed Common Expense, all interest, late charges, reasonable attorneys' fees, cost of collection and any fine levied by the Association. *See* Exhibit A.

135. An actual controversy exists between the parties, and the Court is vested with the power to declare the rights and obligations of the parties under the terms and provisions of the Association's condominium instruments and under the law of the State of Illinois and to adjudicate the final rights of all parties and to give such other relief as may be necessary to enforce the same.

136. The relief sought herein would resolve the controversy between the Association and all Defendants as to the duty to comply with certain restrictions and rules and regulations.

WHEREFORE, Plaintiff, THE FORDHAM CONDOMINIUM ASSOCIATION, prays for the following relief:

A. Entry of a court order declaring the respective rights and obligations under the Declaration regarding CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; LISA CHANG VITALE; and BRIAN SEXTON's duty to comply with the Association's restrictions, covenants, declaration, by-laws and rules and regulations;

B. Entry of a court order declaring CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; LISA CHANG VITALE; and BRIAN SEXTON's are in violation or default of the Association's condominium instruments;

C. Entry of a court order declaring that no one other than the Unit Owner or identified tenants on a lease can occupy Unit 404;

D. Entry of a court order that LISA CHANG VITALE's failure to comply with the Association's restrictions, covenants, declaration, by-laws and rules and regulations is a breach of her lease with the Estate;

18

FILED DATE: 6/18/2024 11:32 AM 2024CH05690

E. Entry of a court order that LISA CHANG VITALE's guests must sign in and out at the front desk or gain permission to enter as proscribed in the rules and regulations;

F. Entry of a court order that LISA CHANG VITALE is not a Unit Owner and is not a member of the Association and cannot act in a manner that is reserved for record Unit Owners;

G. Entry of a court order that LISA CHANG VITALE cannot provide fobs assigned to Unit 404 to non-residents or non-disclosed tenants of Unit 404;

H. Entry of a court order that BRIAN SEXTON, when a guest of LISA CHANG VITALE, must be accompanied by LISA CHANG VITALE at all times when accessing and using the common elements; and

I. Entry of a court order barring BRIAN SEXTON from using a fob assigned to a Unit for which he is not the resident or owner, unless he is with a Unit Owner or resident who remains with him the entire time within the Common Elements;

J. Entry of a court order declaring that neither LISA CHANG VITALE nor BRIAN SEXTON shall communicate with the Association's managing agent and/or visit the on-site management office;

K. Entry of a court order declaring that CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218 and UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; are obligated to reimburse the Association for its attorneys' fees and costs related to CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218 and UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218's default and the bringing of this lawsuit; and

L. Entry of a court order for any further relief this Court deems just and proper.

## COUNT II
### DECLARATORY RELIEF- IN THE ALTERNATIVE TO COUNT I
#### (Against all Defendants- If Sexton is A Trespasser)

137. The Association restates and realleges Paragraphs 1 through 118 of the General Allegations as paragraph 137 of Count II as though they are fully restated herein.

138. This Count is brought pursuant to 735 ILCS 5/2-701.

139. Vitale is not a member of the Association but acts as if she is and expects to be

19

treated as one by the Association.

140. Sexton is not a tenant or Owner of Unit 404.

141. Sexton is a trespasser.

142. The Association has demanded that the Owner and Vitale, who is not a unit owner and is not a member of the Association, not allow a non-resident to use a fob assigned to Unit 404.

143. The Association has demanded that the Owner and Vitale no longer allow a non-resident, when not with an owner or authorized resident to have unfettered access and enjoyment of the common elements, as such access and enjoyment is reserved for owners, residents, and authorized occupants.

144. The Association has demanded that Vitale, who is not a unit owner and is not a member of the Association, not to have contact with the Association's managing agent.

145. The Association has demanded that Vitale, a person who is not a unit owner and not a member of the Association, to direct her questions, concerns, and issues related to her use and enjoyment of Unit 404 to her landlord, the Owner of Unit 404 and the Association's member.

146. The Association has demanded that Vitale, a person who is not a unit owner and not a member of the Association, not violate the Association's condominium instruments.

147. Vitale has refused to comply with the Association's condominium instruments.

148. Sexton continues to come onto the Association's private property, unaccompanied by a lawful occupant.

149. Sexton intentionally enters on to the Association's private property without invitation, authorization, knowledge or consent of the Association or its members.

150. Sexton has no legal right or authority to be on the Association's private property.

151. The Association has a legal right to maintain, administer and protect the Common

20

Elements and the property subject to the Declaration.

152.    Vitale's actions violate the Association's condominium instruments and are a breach under the lease between Vitale and the Estate.

153.    As a result of this breach, Vitale does not have the right to remain in possession of Unit 404.

154.    A unit owner is responsible for the actions of its tenants, residents, and the guests of its tenants.

155.    Section 12 of the Association's Declaration provides that any Unit Owner whose lessee or occupant is in default under the provisions of the By-Laws or the rules and regulations of the Association, the Unit Owner shall pay the Association an agreed Common Expense, all interest, late charges, reasonable attorneys' fees, cost of collection and any fine levied by the Association. *See* Exhibit A.

156.    An actual controversy exists between the parties, and the Court is vested with the power to declare the rights and obligations of the parties under the terms and provisions of the Association's governing documents and under the law of the State of Illinois and to adjudicate the final rights of all parties and to give such other relief as may be necessary to enforce the same.

157.    The relief sought herein would resolve the controversy between the Association and all Defendants as to the duty to comply with certain restrictions and rules and regulations.

WHEREFORE, Plaintiff, THE FORDHAM CONDOMINIUM ASSOCIATION, prays for the following relief:

   A.    Entry of a court order declaring the respective rights and obligations under the Declaration regarding CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; and LISA CHANG VITALE's duty to comply with the Association's restrictions, covenants, declaration, by-laws and rules and regulations;

21

B.     Entry of a court order declaring CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; and LISA CHANG VITALE are in violation or default of the Association's condominium instruments;

C.     Entry of a court order declaring that no one other than the Unit Owner or identified tenants on a lease can occupy Unit 404;

D.     Entry of a court order that LISA CHANG VITALE's failure to comply with the Association's restrictions, covenants, declaration, by-laws and rules and regulations is a breach of her lease with the Owner;

E.     Entry of a court order that LISA CHANG VITALE is not a Unit Owner and is not a member of the Association and cannot act in a manner that is reserved for record Unit Owners;

F.     Entry of a court order that LISA CHANG VITALE cannot provide fobs assigned to Unit 404 or to any other Unit which she possesses to non-residents;

G.     Entry of a court order that BRIAN SEXTON is a trespasser and prohibited for being on the Association's private property;

H.     Entry of a court order declaring that LISA CHANG VITALE shall not communicate with the Association's managing agent and/or visit the on-site management office;

I.     Entry of a court order declaring that CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218 and UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218 are obligated to reimburse the Association for its attorneys' fees and costs related to CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218 and UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218's default and the bringing of this lawsuit; and

J.     Entry of a court order for any further relief this Court deems just and proper.

## COUNT III
## DECLARATORY RELIEF
## (Against Lisa Chang Vitale)

158.    The Association restates and realleges Paragraphs 1 through 122 of Count I as paragraph 158 of Count III as though they are fully restated herein.

22

159. The Association restates and realleges Paragraphs 142 through 147 of Count II as paragraph 159 of Count III as though they are fully restated herein.

160. Vitale has acted in a harassing manner to the Association's on-site community association manager.

161. Vitale has acted in a harassing manner to the people who are working within the on-site management office in the Building.

162. Under the Fair Housing Act, the Association has a duty to prevent its managing agent and employees from feeling harassed.

163. The Association has a contractual duty to prevent its managing agent and employees within the on-site management office from feeling harassed or from feeling that they work in a hostile environment.

164. The managing agent feels harassed by Vitale.

165. The Association has demanded that Vitale not communicate with the Association's managing agent.

166. The Association has demanded that Vitale address all questions, concerns, and issues regarding the use and enjoyment of Unit 404 with her landlord.

167. Vitale refuses to comply with the Association's demands.

168. An actual controversy exists between the parties, and the Court is vested with the power to declare the rights and obligations of the parties under the terms and provisions of the Association's governing documents and under the law of the State of Illinois and to adjudicate the final rights of all parties and to give such other relief as may be necessary to enforce the same.

169. The relief sought herein would resolve the controversy between the Association and all Defendants as to the duty to comply with certain restrictions and rules and regulations.

23

FILED DATE: 6/18/2024 11:32 AM   2024CH05690

WHEREFORE, Plaintiff, THE FORDHAM CONDOMINIUM ASSOCIATION, prays for the following relief:

A. Entry of a court order that LISA CHANG VITALE is in violation of the Association's condominium instruments for harassing the managing agent;

B. Entry of a court order that LISA CHANG VITALE is barred from communicating in any manner with the Association's managing agent, including the on-site manager, the supervisors of the on-site manager, the assistant community association manager, and any and all persons working within the on-site management office, except if it is to address an emergency maintenance issue; and

C. Entry of a court order for any further relief this Court deems just and proper.

**COUNT IV**
**INJUNCTIVE RELIEF**
**(Against All Defendants)**

170. The Association restates and realleges Paragraphs 1 through 122 of Count I as paragraph 170 of Count IV as though they are fully restated herein.

171. The Association restates and realleges Paragraphs 124 through 134 of Count I as paragraph 171 of Count IV as though they are fully restated herein.

172. The Association restates and realleges Paragraphs 160 through 167 of Count III as paragraph 172 of Count IV as though they are fully restated herein.

173. Sexton is either Vitale's guest or a trespasser.

174. The Estate is in violation of the Association's Declaration in that it is allowing Vitale to:

  a. allow a non-resident to occupy Unit 404;
  b. allow a non-resident to have unfettered access to the Common Elements;
  c. allow a non-resident to have access to and use the fobs assigned to the occupants of Unit 404;
  d. harass the managing agent; and
  e. allow a guest to violate the Association's condominium instruments when in the Building.

175. Vitale's and Sexton's conduct jeopardizes the safety and welfare of the other Owners, residents, staff, and agents of the Association.

176. The Act, the Declaration, and other federal and state laws, including the Fair Housing Act, obligate the Board to take all reasonable steps to protect the safety of the Association, its Owners, residents, employees, Community Association Manager, and Board.

177. The Association tried to prevent Vitale from engaging, interacting, or having contact with its employees and personnel to prevent her conduct from harassing its employees, yet the potential for liability to the Association under the Fair Housing Act has only increased.

178. Unless the Board takes all reasonable steps to protect the safety of the Association, its Owners, residents, and employees, the Association is exposed to liability under the Fair Housing Act, breach of contract, and/or for breach of its fiduciary duty.

179. The Association has a clear and ascertainable right in need of protection, namely it has the clear and ascertainable right and obligation to enforce its Declaration for the benefit of all Owners and to prevent its employees and personnel from being harassed.

180. The Association's Owners are suffering and will continue to suffer irreparable harm if Vitale and any third party remain in possession of the Unit and/or continue to violate the Association's condominium instruments.

181. The Association and its employees and personnel are suffering and will continue to suffer irreparable harm if Vitale is allowed to continue to harass them.

182. That the Association has no adequate remedy at law as no amount of money damage will fully compensate the Association so long as the Owner and Vitale continue to violate the Declaration and remain in possession of the Unit 404 and if Sexton is allowed either to continue as a guest or trespasser.

25

183.    That it is highly likely that the Association will prevail on the merits of its Complaint at trial.

WHEREFORE, Plaintiff, THE FORDHAM CONDOMINIUM ASSOCIATION, prays for the following relief:

A.    Entry of a court order that requires CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of a Trust Number 5218; and LISA CHANG VITALE to immediately stop allowing a non-resident to have unfettered access to the Common Elements without the resident present;

B.    Entry of a court order that requires the CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218; UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218; and LISA CHANG VITALE to only allow Unit 404 to be occupied by the Unit Owner or persons identified on a lease for Unit 404;

C.    Entry of a court order that requires LISA CHANG VITALE to comply with the Association's rules and regulations regarding the responsibility to have a guest check-in;

D.    Entry of a court order that prevents LISA CHANG VITALE from contacting the managing agent for any questions, concerns or issues related to Unit 404, except if related to an emergency maintenance issue;

E.    Entry of a court order that requires LISA CHANG VITALE to address all questions, concerns, or issues related to Unit 404 to her landlord;

F.    Entry of a court order that prevents LISA CHANG VITALE and BRIAN SEXTON from exercising any rights within the Association reserved only for Unit Owners;

G.    Entry of a court order barring BRIAN SEXTON from the Association's property unless he is accompanied by a unit owner or resident at all times when in the Common Elements;

H.    Entry of a court order barring BRIAN SEXTON from trespassing on private property;

I.    Entry of a court order barring BRIAN SEXTON from acting as the Unit Owner of Unit 4201 in violation of a previously entered court order;

J.    Entry of a court order preventing LISA CHANG VITALE from remaining in possession of Unit 404;

K.   Entry of a court order requiring the immediate removal of any tenants or guests regardless of the length of tenancy, from Unit 404;

L.   Entry of a court order enjoining LISA CHANG VITALE and BRIAN SEXTON from occupying Unit 404 when either she or both of them act in a manner that jeopardizes the safety of the Association Owners, residents, employees, personnel, and management;

M.   Entry of a court order requiring CHICAGO TITLE LAND TRUST COMPANY, as the successor trustee of Trust Number 5218 and UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218 are obligated to reimburse the Association for its attorneys' fees and costs related to CHICAGO TITLE AND LAND TRUST COMPANY, as the successor trustee of Trust Number 5218 and UNKNOWN BENEFICIARIES OF TRUST NUMBER 5218 to pay the legal fees and costs incurred by The Fordham Condominium Association in enforcing the Declaration and bringing this lawsuit; and

N.   Entry of a court order for any further relief this Court deems just and proper.

Respectfully Submitted,
THE FORDHAM CONDOMINIUM
ASSOCIATION,

By:_____
            One of its attorneys

Gabriella R. Comstock
*Keough & Moody, P.C.*
Attorney Number 44996
114 E. Van Buren Avenue
Naperville, IL 60540
(630)369-2700
grc@kmlegal.com

27

FILED DATE: 6/18/2024 11:32 AM   2024CH05690

## VERIFICATION BY CERTIFICATION

I, SUSAN FOX GILLIS, under penalties as provided by law pursuant to 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Dated: 6·13·24

SUSAN FOX GILLIS, as President and on behalf of THE FORDHAM CONDOMINIUM ASSOCIATION